*Day, C. J.
This case was reserved for decision here upon [429* the facts found by the district court.
It appears that on the 5th day of March, 1858, Jonathan Warner and Charles Howard entered into a written contract, by which it was agreed that Warner should sell and deliver to Howard, on the bank of the Pennsylvania and Ohio Canal, at Niles, in the county of Trumbull, not less than four hundred nor more than seven hundred tons of iron ore each month during the following season of canal navigation, at $2.40 per ton ; and not less than four hundred nor more than eight hundred tons per month during the canal navigation season of 1859, at the same price; and that Howard should pay for the ore thus delivered by a stock of goods (subsequently invoiced at $5,005), and by the conveyance to Warner of certain, real estate, owned by Howard and valued at $5,500, and by pig-iron to be delivered to Warner at Pittsburg prices.
They agreed to have a settlement at the close of each month, and to apply, from the purchase price of the goods, one dollar on each ton of ore delivered, and that the remaining dollar and forty cents per ton should be paid in pig-iron; and so continue until the price of the goods was exhausted ; then the price of the land was to be applied in the same manner.
Howard turned over the stock of goods to Warner, who commenced delivering the ore. About July 5, 1858, Howard failed and absconded, without any further performance of the contract on his part.
July 7, 1858, McCombs procured an attachment against Howard, but did not attach his real estate, or the ore, nor, at that time, garnishee Warner.
July 8,1858, Tod & Ford sued out their attachment against Howard, and levied on said real estate, and the ore (about sixty-two tons) then delivered under the contract; and, on the requisite affidavit and process, garnished Warner. Nothing further has yet been done in that case on this garnishment.
*430, 431 July 9, 1858, Warner filed his petition in the same court, setting forth his contract with Howard, and showing reasons why ho should be allowed to'fulfill it, and asking the court to authorize 430] him so to do, and specifically to execute the contract. *He also stated in his petition that “ creditors of said Howard have procured attachments to be issued against the goods and property, effects and credits of said Howard, from this court, and have caused the same to be levied on the property and credits of said Howard, .and have made plaintiff (Warner) garnishee therein, and served him with notice as such garnishee ; and, not being fully advised as to the ultimate legal effoet of the same, and upon his rights to proceed, notwithstanding the same, to complete his said contract and deliver said ore, nor as to the legal effect thereof in ultimately determing the right and property of the ore delivered, in the event of the court refusing to make the final order and decree herein prayed for, he asks that a receiver be appointed to take possession of said ore as it is delivered, and to hold the samo in his possession, ■subject to the order of this court, until a final hearing of this cause, .and other actions wherein he has been, or may bo, garnished with •reference to said ore, or the delivery thereof.”
Thereupon, on the same day, James McEwen was appointed and ■qualified as receiver, and entered upon the discharge of his duties.
July 9, 1858, Tod & Ford caused an attachment to be issued in this case, to the sheriff of Trumbull county, who, on the 12th of July, attached seventy tons of ore, as Howard’s, appraised it and made return in due form, adding thereto that he “ left the property whore found by consent of David Tod.”
October 11, 1858, McCombs, in his suit against Howard, began July 7, 1858, sued out an attachment against Howard, and garni■■sheo process against Warner and McEwen. McEwen was duly ¡served on the same day. Warner was not served otherwise than by the attorney of Warner (being also the attorney of McCombs) ¡accepting service for Warner.
October 12, 1858, McEwen, the receiver, filed his report in the Warner case, stating that on the 13th day of July, 1858, he took possession of sixty-two tons of ore subject to the previous attachment of Tod & Ford, being all then delivered by Warner; and that Warner had subsequently delivered at Niles, Trumbull county, 1,792 tons of ore, which was then in his custody.
■431] *At the February term, 1859, of the Mahoning common *432 pleas, where all the cases before mentioned were pending, Tod &’ Ford filed in the Warner case a motion to be made parties thereto, claiming thereby that they were “ interested in the controversy in the action, and in the real estate, contract, and property therein involved and, as the ground of their claim, set forth the indebted ness of Howard to them, the pendency of their action against him, .■and the attachment proceedings therein, by virtue of which they allege that on the 8th day of July, 1858, the “ real estate in the petition described was in due form attached to answer the claim of .said Tod & Ford; and, on the same day, notice was duly served upon the said Warner to charge him as garnishee of said Howard, under the contract in the petition mentioned.”
At the same term, the court ordered this motion to be made part of the record in the case ; “ and, on hearing the matters, and satisfactory evidence being given, the court find that said Tod & Ford are interested in the controversy in this action, as in their motion, ■stated,” and thereupon grant the same; whereupon they entered their appearance as defendants.
Leave was then granted to Warner to file an amended petition, and to Tod & Ford to answer thereto. The amended petition was filed, and Howard, also Tod & Ford, on the 13th of May, 1859, filed their answers thereto, resisting Warner’s claim for a specific performance of the contract. ■
At the May term, 1859, of the common pleas, Warner obtained a decree from which Howard and Tod & Ford took an appeal to the district court.
At this term (May, 1859), both McCombs and Tod & Ford obtained judgments in their respective suits against Howard — McCombs for $9,830.18, and Tod & Ford for $7,779.37 — and both cases, as to the attachment proceedings, remain continued without any order, in either case, against the garnishees or attached property.
May 16, 1859, Tod & Ford, in their case against Howard, caused .a second order of attachment to be issued to the sheriff of Trumbull county, who, on the nest day, attached about two thousand tons of ore in Trumbull county, but returned, “ left the property attached where I found the same.” This *was .the same ore [432 delivered by Warner, and claimed to be held by the receiver in his case.
May 23,1859, the receiver made a further repoi’t, stating that he *433 had received, including the ore mentioned in his former report,. 2,689 tons of ore, 878 tons of which was delivered by Warner after the garnishment in the ease of McCombs.
May, 1860, all the parties in interest, including McCombs, and Tod & Ford, entered into a written agreement that the receiver should soil the ore in his hands; but it was stipulated that “ such sale shall be without prejudice to any of the rights of any of the parties, but the proceeds shall be deemed and held the representative of said ore, and the rights of the parties shall attach thereto, as to said ore, if not sold, and said proceeds shall be disposed of by the judgment and order of the court, as the rights, claims, and. liens of the differemt parties in and upon said ore may be determined.”
October 18, 1860, the receiver sold the ore under this agreement —500 tons to Brown, Bonnell & Co., for $1,100, and 1,848 tons to-Wood, Warner & Co., for $3,788.65, and took notes therefor.
August 14, 1861, McCombs brought the present suit against Howard, Tod & Ford, M.cEwon, Warner and others, to subject the-avails of the ore to the payment of his judgment, and in which an order of attachment was issued, and Brown, Bonnell & Co. and Wood, Warner & Co., were garnished. They answered, admitting their indebtedness to the receiver.
In 1861, at the September term of the district court, the Warner-ease was tried, and the court found that, before and after the commencement of the suit, ho had fully paid for the real estate in ore,, and decreed a conveyance of the land to him. The court ordered that, out of the proceeds of the ore in the hands of the receiver, a. small amount be applied in satisfaction of a mortgage on the land, hold by another party; and that the “case be remanded to the-court of common pleas, to abide its further order as to the disposition of the residue of said proceeds.”
At the February term, 1862, of the common pleas, to which the eause was remanded, the caso was ordered to the execution docket; 483] but at the next term, May, 1852, on motion of *Tod & Ford,, it was reinstated on the calendar of the common pleas, where it remains and is still undisposed of.
May 26, 1863, Tod & Ford filed their motion in the Warner case-for the distribution of the funds in the receiver’s hands, and on the 17th day of August, 1864, filed their cross-petition in the same-case, making McCombs a party defendant, stating substantially the *434 foregoing facts, claiming said proceeds by prior lien, and praying, distribution thereof to them. To this cross-petition, McCombs, by his attorney, waived process, and entered his appearance.
The case now before us was appealed to the district court, and. by that court reserved for decision in this court.
It is claimed on the part of Tod & Ford, that the proceedings in-this case are irregular, for the reason that it is sought to distribute-a fund held in another case, where the equities and priorities of the parties may be more properly determined. There is, perhaps, force in this objection. But this case was brought in the same-court in which the other was pending, and all the parties having any interest in, or control of the fund, are parties in this case. The courts below have assumed to control the fund in this case, and it comes here upon a finding of facts relating to the rights of the parties, as fully as if the proceedings below had been confined* to that case instead of entering into this. The manner in which the whole controversy comes before us, is but an irregularity at most, and may be disregarded by this court, as it was by the courts-below, for all the rights of the parties in that case may be equally well considered and protected in this.
It is conceded that, as the ease now stands (the interests of other-parties having been otherwise adjusted), the entire fund in controversy must be applied upon either the judgment of McCombsagainst Howard, or on that of Tod & Ford against the same party, for either judgment exceeds the amount of the fund, and both parties claim it; the question is, which of them is entitled to it.
Under the agreement of the parties, their rights to the proceeds-of the ore held by the receiver, are to be determined as if the ore-still remained in his hands.
*The several quantities of ore that came to the hands of [434 the receiver, were proceeds of the contract of Howard with Warner. About sixty-t-wo tons were delivered to Howard as required by the contract, before the commencement of any of the proceedings in relation to it. This ore was attached as Howard’s, by Tod & Ford, in their suit against him, and this was the first proceeding of any kind against it. The same ore was subsequently taken by the receiver in the Warner case, and was held by him expressly subject to this attachment. A subsequent garnishment of Warner by other parties could avail nothing, for he had parted with the- *435 «ore; and the proceedings against the receiver did not change the -prior liens under which he held the ore. It follows that Tod & Ford have the prior right to this sixty-two tons of ore.
Questions of more difficult solution arise, in determining the priorities of the parties to the ore delivered to the receiver subsequent to their respective proceedings in attachment.
Both parties are judgment creditors of Howard; to that extent their equities are equal. They seek to work out their priorities through their various proceedings in attachment, and through the two civil actions, based on equitable claims respecting the ore in '•controversy.
If anything was gained by their respective garnishment of Warner, that of Tod & Ford, being prior in’time, was prior in right. For this reason, it is claimed on the part of McCombs, that the claim of Howard against Warner was not subject to garnishment, because it was for the payment of property other than money, and'was, moreover, dependent on such contingencies, arising -on an executory contract, that it could not be enforced.
If this objection to the garnishment of Warner be well taken, it .applies with equal force to the garnishment of the receiver by McCombs, if, indeed, that were at all allowable; for the ore, in the hands of the receiver, was, at that time, held by him subject to the ■same contingencies that attended it in the hands of Warner.
The same objection exists against obtaining a lien on the fund 435] in the hands of the receiver by McCombs, through this *suit, which was brought before the rights of Warner and Howard, and 'Tod & Ford were settled in the Warner case. Moreover, if a lien ■was so acquired, it must remain subordináte to the equities existing against the fund when the suit was brought. At that time the fund was in court, in a case where Tod & Ford were parties, asserting a ■ claim thereto, based on as broad grounds, to say the least, as any .asserted by McCombs in this case.
But in addition to any ground of claim to priority in behalf of McCombs, Tod & Ford had attached the land contracted to Warner ■by Howard, which was in controversy in the Warner case, and out •■of which the fund in dispute arose. This attachment was anterior to .any proceedings by McCombs on which he bases his claim to ■priority. It therefore becomes material to inquire what, if any, «equities were acquired by the attachment of the land.
Under the provisions of the code all the rights of Howard in the *436 land were subjected, by the attachment, to the payment of the debt .of Tod & Ford in the suit against him, for Howard then had the.legal title, subject only to his contract with Warner. According to-the terms of that contract, nothing had been paid for the land; for-no part of the ore was to be applied in payment of the land until the goods were fully paid for, at the rate of one dollar for each ton of ore delivered; and the quantity delivered was insufficient to pay' for the goods at that rate of payment.
But, if as between Warner and Howard (as it seems to have been.held in the Warner case), the whole price of the ore might, inequity, be applied in the payment of the goods first, and then of the land, it appears that, when the land was attached, there had' not been enough ore delivered to pay for the goods then in Warner’s-hands, without including the sixty-two tons of ore attached by Tod & Ford. And if the sixty-two tons bo included in payment.of the goods, it would leave but about five tons to be applied in-payment of the land.
At law, the title of Howard in the land remained unaffected by the contract, and Warner had acquired only a right of action for a breach of the contract, in case it was not ^performed. But, [436.--in equity, Howard held the title in trust for the pi’ice agreed to be paid for the land. Since, then, the price remained wholly, or substantially unpaid, Howard, at tfie time of the attachment, held both> the legal and equitable title to the land; for it is settled that, as a-general rule, the purchaser, under a contract for the sale of land,, before conveyancó, “ has neither legal nor equitable right, as against. the seller, until he pay the purchase money.” 1 Hilliard on Vend. 9; Brush v. Kinsley, 14 Ohio, 20.
The attachment, holding all of Howard’s rights in the land, rendered it impossible for him to perform the contract, and therefore • inequitable for him to receive the purchase price. Warner was, therefore, compelled to resort to his action against Howard and Tod & Ford, and to bring into court the property to be delivered by him for the land, and to have the rights of the parties adjudicated in accordance with the principles of equity.
Warner could not, in equity, obtain a title to the land without-’ payment of the purchase price; and the court, in deciding in his -■ favor, must have regarded the bringing of the fund into court as-equivalent to payment by Warner, and must have regarded the-fund thus paid as held in court for the benefit of the party equitably,' *437 •entitled thereto; and so proceeded to decree the land to Warner, .-and to discharge him from the contract.
When, therefore, Warner obtained his decree for the land against Howard and Tod & Ford, the fund in court arising from the land remained to be disposed of between the other parties. This the •court failed to do in that case, but expressly left the question open, and now it remains to be done in this case, but upon the same principles that would have controlled in that case upon the same •state of facts that are found in this.
Howard and Tod & Ford were the only remaining parties that had any interest in the land from which the fund arose. Tod & Ford had obtained a judgment against Howard for an amount exceeding that of the fund. As between them, the right of Tod & Ford to the fund can not be questioned; for Howard had no more 437] equitable right to the fund arising from *the land after the ¡attachment than he would have had if it had arisen by a sale of the land on final process, to satisfy the judgment, for which puiv pose it was attached and held.
It was only through the equities of Warner that the land had been -decreed away from Tod & Ford. Indeed, Warner could not have taken the land from them without first perfecting his equitable right thereto, by payment to them of the amount due when the land was attached; for, as against Howard, they were entitled to "the fund, and, as against Warner, they were entitled to receive it, “by reason of their holding this equitable right to the purchase price ■on yielding up the title to the land held by their attachment.
Since, then, Warner, in order to secure his equitable rights under the contract, was bound to make payment to Tod & Ford by reason ■of their attachment of the land, it follows that their equitable right to the fund began when the attachment was levied. This was long before any of the proceedings on which McCombs bases his claim to priority.
Moreover, whatever McCombs has gained by his proceedings in .garnishment or in equity, is only through Howard, and through Warner as the debtor of Howard. He could not, on the one hand, thereby supersede the then existing rights of Tod & Ford against them, nor, on the other, gain any better right against Warner than that of Howard against him. As between Warner and Howard, the former had the right to use the fund to obtain his equitable xights under the contract, and Tod & Ford, as against them both, *438 were equitably entitled to receive the same fund, on yielding their rights in the land, out of whic'h it arose-after it was held by their legal lien.
At best, McCombs but succeeded to the rights of Howard -and W arner, and stood in no better condition than they did against Tod .& Ford.
It follows, from what has been said as to the rights of those parties, that, as against McCombs, Tod &Ford have the prior and better right to the fund in controversy.
This view of the case renders it unnecessary for us to determino the numerous questions raised upon the other proceedings in attachment and garnishment, which have been discussed in argument.
*A decree will be entered in favor of the defendants, Tod & [4U8 .Ford, or their representatives, as they now stand on the record.
Brinkerhoff, Scott, Welch, and White, JJ., concurred.